ROBERT C. STORRIE V. HENRY W. CORTES AND WIFE.

Decided December 7, 1896.

1. Impairing Obligation of Contract—Overruling Decisions.

The constitutional provisions against laws impairing the obligation of contracts, is not violated by the decision of a State Court which overrules previous decisions sustaining the validity of an obligation, though such later ruling is applied to rights acquired on the faith of the previous decision, after it was pronounced, and before it was overruled. The cases on this question reviewed. (Pp. 285 to 294.)

2 Same.

In Higgins v. Bordages, 88 Texas, 458, the homestead was held to be protected by the Constitution against sales to satisfy liens for local assessments for city street improvements, given by the Statutes of the State, and the previous decision in Lufkin v. City of Galveston, 58 Texas, 545, holding the contrary, was overruled. One who had, on faith of the earlier decision, acquired a claim against a homestead for the cost of such improvements, could not sustain the right to enforce the lien on the ground that, as applied thereto, overruling such decision impaired the obligation of his contract. (Pp. 285 to 294.)

ON REHEARING.

3. Local Assessments—Personal Liability of Owner.

Where the charter of a city so authorizes, the cost of local improvements may be made a personal charge against the owner of the property, as well as a lien against the property itself, and, the charter of the city of Houston containing such authority, the holder of a certificate for cost of such improvements was entitled to a personal judgment against the owner of the lot, though his lien against the lot, it being the homestead, could not be enforced. (Pp. 294, 295.)

QUESTION CERTIFIED from Court of Civil Appeals for the First District, in an appeal from Harris County.

*Ewing & Ring,* for appellant.—The court erred, upon the facts appearing, in failing to hold and adjudge, in substance and to the effect, that perforce of the doctrine of stare decisis, the plaintiff have his demand established and enforced as a lien or charge upon the alleged homestead property described in his petition. Adams v. Bateman, 30 S. W. Rep., 855; Sydnor v. Gascoigne, 11 Texas, 455; Willis v. Owen, 43 Texas, 48; Smith v. Power, 23 Texas, 33; Reeves v. Petty, 44 Texas, 254; Garner v. Stubblefield, 5 Texas, 562; Swayne v. Chase, 30 S. W. Rep., 1049; Sutherland's Stat. Con., secs. 211, 307-310, 313, 314, 317, 318; Wells' Stare Decisis, secs. 28, 608; 23 Am. and Eng. Encycl. Law, 24-31; Harrow v. Myers, 29 Ind., 470; Rockhill v. Nelson, 24 Ind., 474; Fisher v. Horicon Iron, etc., Co., 10 Wis., 293; Grubbs v. State, 24 Ind., 296; Jones' Bailments, 60; Giblin v. Jordan, 6 Cal., 418; Welch v. Sullivan, 8 Cal., 165; Poulsen v. Portland (Ore.), 1 Law Rep. Ann., 673.

The court, upon the facts appearing, in failing to hold and adjudge, in substance and to the effect, that plaintiff have his demand established and enforced as a lien or charge upon the alleged homestead property, committed manifest error, in that thereby the court enforced against plaintiff a law of the State, retroactive in effect, which impaired the obligation of contracts, in violation severally of section 16, art. 1, of the

State Constitution, and sub-division 1 of section 10 of art. 1 of the United States Constitution. Constitution of Texas, art. 1, sec. 16; United States Constitution, art. 1, sec. 10; Grigsby v. Peak, 57 Texas, 143; Ins. Co. v. Debolt, 16 How., 416, 432; Douglass v. Pike Co., 101 U. S., 677, 687; Havemeyer v. Iowa Co., 3 Wall., 294; Gelpcke v. Dubuque, 1 Wall., 175; Chicago v. Sheldon, 9 Wall., 50; Olcott v. Fond du Lac Co., 16 Wall., 678; New Orleans Gas Light Co. v. Louisiana Light, etc., Mfg. Co., 115 U. S., 650; Sutherland's Stat. Con., sec. 319; 3 Am. & Eng. Encycl. Law, 757 et seq.; Central Land Co. v. Laidley, 159 U. S., 103.

Upon the first question certified they cited in the Supreme Court the following additional authorities: Farrior v. New England Mortgage Security Co. (Ala.), 12 Law. Rep. Ann., 856; Haskett v. Maxey (Ind.), 19 Law Rep. Ann., 379; Harmon v. Auditor of Public Accounts, 123 Ill., 122; Geddes v. Brown, 5 Phillim., 180; Menges v. Dentler, 33 Pa. St., 495; Ryalls v. Mechanics Mills (Mass.), 5 Law Rep. Ann., 667, note.

Upon the second certified question on rehearing they cited sec. 23a of special charter of the city of Houston (Spl. Laws 21st Leg.; p. 100), and discussed Hazzard v. Heacock, 39 Ind., 177; Lefevre v. Detroit, 2 Mich., 587; Northern Liberties v. St. John's Church, 13 Pa. St., 104; Broadway Bap. Church v. McAtee, 8 Bush. (Ky.), 508; Muscatine v. Railway, 79 Iowa, 651; Bennett v. Buffalo, 17 N. Y., 383, 388; Mayor, etc., of N. Y. v. Colgate, 12 N. Y., 140, 143; City of Galveston v. Heard, 54 Texas, 420.

*E. P. Hamblen,* for appellees.—The court did not err in rendering judgment in defendants' favor, and should not have sustained the appellant's contention of stare decisis, for the Supreme Court of this State had duly considered the question and promulgated its decision that the homestead is not liable for street assessments. Higgins v. Bordages, 88 Texas, 458.

There is no impairment of the obligation of any contract, and there is no violation of the Constitution of this State, or of the United States. Central Land Co. v. Laidley, 159 U. S., 103; New Orleans Water Works Co. v. Louisiana Sugar Refining Co., 125 U. S., 20.

On rehearing upon the question of personal liability involved in the second certified question he cited City of Galveston v. Heard, 54 Texas, 428.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District has certified to this court the following statement and questions:

"This cause, which is now pending before this court on appeal, was an action brought in the District Court of Harris County by Robert C. Storrie, the appellant, against Henry W. Cortes and his wife, Mary M. Cortes, appellees, to foreclose an alleged lien of certain improvement certificates, of less amount than $500, upon the homestead of appellees, based on local

assessments made for paving the street abutting on said homestead pursuant to the provisions of the charter of the city of Houston, a city of more than ten thousand inhabitants. The contract for the paving of the street was let June 18, 1889, in accordance with the provisions of the charter of the city, and the assessment was made and the improvement certificates were issued in compliance with said charter so as to make them a lien on the land, except for the fact that it was the homestead of appellees. Upon the trial below the court rendered judgment in favor of the appellees upon the merits instead of dismissing the case.

"The following questions of law arise upon the facts which are submitted to the Supreme Court for determination:

"1.   Should a lien be enforced in favor of the appellant against the homestead of appellees for the amount of said improvement certificates by reason of the fact that the contract for the pavement was made and performed before the decision of the Supreme Court in the case of Higgins v. Bordages?

"2.   In case no lien should be enforced against the homestead of appellees, are they or the appellee Henry W. Cortes personally liable for the amount of the certificates?"

It is claimed by counsel for the appellant that the lien upon the homestead of appellees, attempted to be created by the action of the city council of the city of Houston, ought to be enforced in this case, notwithstanding the decision heretofore made by this court in the case of Higgins v. Bordages, 88 Texas, 458, because the rights of the appellant under the contract made with the city of Houston accrued after the decision in the case of Lufkin v. City of Galveston, 58 Texas, 545, and before the decision in the case of Higgins v. Bordages. Two grounds are asserted upon which this court may and ought to sustain that lien, although its later decision upon the subject be maintained. It is claimed (1) that a correct application of the doctrine of stare decisis would leave the case of Lufkin v. Galveston in force as to all contracts made and rights accruing after it was made and before the rendition of the later decision which overruled it; (2) that the decision in the case of Higgins v. Bordages, in so far as it affects contracts made between the dates named, is violative of the obligation of such contracts and is therefore not to be given effect as to them.

The rule of stare decisis was thoroughly considered by this court before it made the decision in Higgins v. Bordages, and also upon the motion for rehearing filed in that case. Recognizing the importance of standing by the former decision of the court as a general rule, we, however, determined that, in the circumstances of that case, it was the duty of the court to overrule the former decision of Lufkin v. Galveston. We have found no authority which attempts to apply the doctrine of stare decisis as is here sought, nor do we see any sound reason which would sustain such application of it. On the contrary, we think that the very foundation of the rule is antagonistic to the proposition now urged upon this court. If we stand by Lufkin v. Galveston, we must overrule Hig-

gins v. Bordages, because it cannot be true that a case can be overruled and at the same time be held to be the law of the State in which it was rendered.    9 American Law Review, 398.

The second ground requires more careful examination, although we think it equally untenable; but it has been supported by the citation of cases decided by the Supreme Court of the United States which demand our careful consideration.    The doctrine here sought to be engrafted upon the jurisprudence of this State originated in a dictum of Chief Justice Taney in the case of Insurance Co. v. DeBolt, 16 Wallace, 432, in which he used the following language:    "Indeed, the duty imposed upon this court to enforce contracts honestly and legally made would be vain and nugatory if we were bound to follow those changes in judicial de-cisions which the lapse of time and the change in judicial officers will often produce.    The writ of error to a State court would be no protection to a contract if we were bound to follow the judgment which a State court had given and which the writ of error brings up for revision here. And the sound and true rule is that, if the contract, when made, was valid by the laws of the State as then expounded by all of the departments of the government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the Legisla-ture of the State or decision of its court altering the construction of the law."    As we before stated, this was a dictum of Chief Justice Taney— indeed, in the beginning of the opinion, he says:    "In this case the judg-ment of the Supreme Court of the State of Ohio is affirmed; but the ma-jority of the court who give this judgment do not altogether agree in the principles upon which it ought to be maintained.    I proceed to state my own opinion, in which I am authorized to say my brother Grier entirely concurred."    It is thus seen that the expression quoted above was simply the opinion of the Chief Justice, concurred in by one of his associates, and upon a proposition which could not have been involved in the affirm-ance of the judgment, for, in its very terms, the proposition of law laid down could not have had reference to any other than the judgment then under consideration, which was affirmed.    It is worthy of notice that so eminent a jurist should have thought it necessary to say that an Appellate Court was not bound by the judgment under review, in support of the proposition that the federal courts are not bound by decisions of State courts.

In almost every case which followed this in the Supreme Court of the United States, as well as the cases in the State courts which follow them, the statement made by Chief Justice Taney has been made the basis for refusing to follow the decision of the State court, when found to be an-tagonistic to what was thought to be the obligation of a contract made prior thereto.

In no case decided by the Supreme Court of the United States, nor do we believe in any case decided by any State court, has it ever been held that a decision which overruled a former decision of the same court was obnoxious to the provisions of the Constitution of the United States—or

of the State—which prohibits a State from enacting any law that violates the obligation of a contract. On the contrary, in every instance where the question has come before the Supreme Court of the United States in the exercise of appellate jurisdiction over the Supreme Court of a State, and in which the Federal Supreme Court was confined in the determination of the question to definite constitutional and legal principles, it has been held that a decision of a court is not a law, within the provisions of the Constitution of the United States. In the case of Central Land Co. v. Laidley, 159 U. S., 109, which involved the very question, the court said: "In order to come within the provision of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of the contract have been impaired, but it must have been impaired by some act of the legislative power of a State, and not by a decision of its judicial department only." The Supreme Court of the United States here recognizes the doctrine that the decision of a court is not a law and does not come within the meaning of that word as used in the Constitution of the United States. That eminent court has not infrequently overruled its own decisions, but in no instance has it applied the same rule that is, by it, applied to like cases arising under overruled decisions of State courts.

The cases decided by the Supreme Court of the United States which bear upon this question may be classified as follows:

First. Those which hold that where the contract was valid when made, under a statute recognized as valid by the officers of the different departments of the State government, such contract will be sustained, as against a decision of the highest court of that State declaring the law void, if made subsequently to the time when the contract was entered into. Pine Grove Township v. Talcott, 19 Wall., 666; Ins. Co. v. DeBolt, cited above; Olcott v. Supervisors, 16 Wall., 678.

In the first case cited, the court, after quoting substantially what has been quoted from the opinion of Chief Justice Taney, said: "Such a rule is based upon the highest principles of justice. Parties have a right to contract and they do contract in view of the law as declared to them when their engagements are formed. Nothing can justify us in holding them to any other rule. If, then, the doctrine asserted in Whiting v. Fond du Lac County is inconsistent with what was the recognized law of the State when the county orders were issued, we are under no obligation to accept it and apply it to this case. The orders were issued in February, 1869, and it was not until 1870 that the Supreme Court of the State decided that the uses for which taxation was authorized by the statute of April 10, 1867, were not public uses, and therefore that the statute was invalid." The decision of the Supreme Court of Wisconsin, referred to, was made after the issuing of the orders by the county; and the Supreme Court of the United States followed what was understood to be the law in Wisconsin prior to that time, in opposition to the decision of the Supreme Court of that State.

Second. Another class of cases embraces those in which the Supreme Court of the State had made a decision construing a statute or the Constitution of the State, and thereafter contracts were entered into which, according to the construction placed upon the law by the existing decisions of the Supreme Court, were valid, but subsequently thereto the same court overruled the former decision, and held such contracts to be void. In this class of cases the Supreme Court of the United States has in some instances held that the later decision of the State court was violative of the obligation of a contract, relying upon the quotation from the opinion of Chief Justice Taney, and that, therefore, they would follow the decision under which the contract was made. Ralls County v. Douglas, 105 U. S., 720; Kenosha v. Lamson, 9 Wall., 477; Gelpcke v. Dubuque, 1 Wall., 175.

Third. The third class of cases consists of those in which the court has held that, where there is a conflict in the decisions of the Supreme Court of the State, the United States Courts will, in the exercise of their independent jurisdiction, decide according to their own judgment of the law. Pleasant Township v. Ins. Co., 138 U. S., 67; Burgess v. Seligman, 107 U. S., 20.

Fourth. The last class that we notice consists of those cases in which the Supreme Court of the United States was in the exercise of its appellate jurisdiction by writ of error to the Supreme Court of a State, and in this class that court has uniformly held that the decision of a State court is not a law within the meaning of the Constitution of the United States wherein it prohibits a State from passing a law impairing the obligation of contracts. Central Land Co. v. Laidley, 159 U. S., 109; Knox v. Exchange Bk., 12 Wall., 379; Lehigh Water Co. v. Easton, 121 U. S., 388; Railway v. McClure, 10 Wall., 511.

The first three classes of cases mentioned above originated in federal courts whose jurisdiction was concurrent with and independent of the courts of the State, and were thence carried to the Supreme Court of the United States. In the greater number of those cases the proposition laid down by Chief Justice Taney, which we have quoted, is cited, and would appear upon casual reading to be the basis of the decision of the court, but an examination of the opinions in the several cases will bring one to the conclusion that the real ground upon which each of the decisions rests is that the federal courts do not consider themselves bound to follow the State courts in the determination of questions of which they have concurrent and independent jurisdiction, and that in determining what the law of the State is, as to the matter under consideration, they will follow or disregard the decisions of the State courts, as they may deem best. It follows that the decisions of the Supreme Court of the United States in those cases are not binding upon the State courts as authority in the determination of like questions. However unfortunate such a conflict may be, the State courts cannot afford to surrender the independent exercise of their judicial power over such questions.

In the fourth class of cases stated above, the jurisdiction of the Su-

preme Court of the United States was appellate, and exercised by writ of error to the Supreme Court of the State. In such cases its decisions are binding as authority upon the State courts and must be followed. As before shown, the Supreme Court of the United States, when exercising its appellate jurisdiction over a State court, and when governed by the provisions of the Constitution of the United States, have held against the contention that a decision of a court is a law, and we believe that this class of decisions truly and correctly announces the rule of law by which this case must be governed.

This question has never before arisen in our State, so far as we are able to find, and, in fact, it appears to have been passed upon in but few of the States of this Union.

In the case of Levy v. Hitsche, 40 La. Ann., 500, the Supreme Court of that State held that it would disregard later decisions which overruled former decisions upon the question of jurisdiction of one of its courts, and would follow the former decision in support of rights accruing thereunder. But a careful reading of the opinion seems to justify the conclusion that the court overruled the later decisions, in so far as they were in conflict with those formerly made.

The Supreme Court of Alabama, in the case of Farrior v. New England Mortgage Co., 92 Ala., 176, fully commits itself to the doctrine stated by Chief Justice Taney, and so often repeated by the Supreme Court of the United States, to the effect that, where a contract was valid at the time it was made, under a decision of the highest court in the State, a subsequent decision of the same court overruling the first would be in violation of the obligation of the contract, and void. This is the only decision of a State court that we have been able to find which clearly announces that doctrine.

Menges v. Dentler, 33 Pa. St., 495 (75 Am. Dec., 616), is also cited as holding the same doctrine. In that case, a certain sheriff's deed was held by the Supreme Court of the State of Pennsylvania to be void, and afterwards the Legislature enacted a law declaring the deed to be valid. Subsequently the same deed came before the court in a controversy over a tract of land, and the Supreme Court held the deed valid under the act of the Legislature. After this decision was made, a third party purchased the land from that one which prevailed in the last decision, and paid a valuable consideration for it. In a subsequent suit brought by plaintiff in the former case against the purchaser, the court held that, as he had purchased in good faith under the judgment of the Supreme Court in the former case, he would be protected, although that judgment was erroneous in holding the statute constitutional which affirmed the validity of the deed. We do not consider this as supporting the doctrine contended for here.

If the decisions of the Supreme Court of the United States are based upon the ground that the Federal Court may, at pleasure, disregard the decisions of the highest courts in the different States, it can be easily understood as the arbitrary exercise of power; but when it is sought to

sustain those decisions upon the asserted ground that a decision of any court, or the recognition by any department, or all the departments of government can give validity to a law which is contrary to the Constitution of the State, and make valid that which the Legislature could not enact, and, further, that a subsequent decision, which overrules that which was wrongly made, violates the obligation of contracts made during the continuance of the first and erroneous decision, we cannot comprehend how this can be, unless the court is authorized to exercise sovereign power, by which alone the Constitution of a State can be changed. When courts speak of the obligation of contracts they mean the legal obligation or binding force of such contracts; and, if the law upon which the validity of the contract depends be unconstitutional, it is not a law and never was a law, and the pretended contract is void and has no legal obligation to be violated.

In the case of Gelpcke v. Dubuque, 1 Wallace, 175, the validity of bonds issued under a law passed by the Legislature of Iowa was in question, and a majority of the court held that the bonds were valid, because issued under a line of decisions which affirmed the validity of the law, and before the rendition of the decisions which declared the law void. Judge Miller filed a very able dissenting opinion, from which we make the following extract. Speaking of the decision of the majority of the court, he said: "They have said to the Federal Court sitting in Iowa, 'you shall disregard this decision of the highest court of the State on this question. Although you are sitting in the State of Iowa, and administering her laws, and construing her Constitution, you shall not follow the latest, though it be the soundest, exposition of its Constitution by the Supreme Court of that state, but you shall decide directly to the contrary; and where that court has said that a statute is unconstitutional, you shall say that it is constitutional. When it says bonds are void, issued in that State, because they violate its Constitution, you shall say they are valid, because they do not violate the Constitution.' "

The judge then proceeds to show the evil results which will follow such a line of decisions and the conflict that must result from them, and continues: "But, while admitting the general principle thus laid down, the court says it is inapplicable to the present case, because there have been conflicting decisions on this very point by the Supreme Court of Iowa, and that as the bonds issued while the decisions of that court holding such instrument to be constitutional were unreversed, that this construction of the Constitution must now govern this court instead of the later one. The moral force of this proposition is unquestionably very great. And I think, taken in connection with some fancied duty of this court to enforce contracts, over and beyond that appertaining to other courts, has given the majority a leaning towards the adoption of a rule, which in my opinion cannot be sustained either on principle or authority. The only special charge which this court has over contracts, beyond any other court, is to declare judicially whether the statute of a State impairs their obligation. No such question arises here, for the plaintiff claims

under and by virtue of the statute which is here the subject of discussion. Neither is there any question of the obligation of contracts, or the right to enforce them. The question goes beyond that. We are called upon, not to construe a contract, nor to determine how one shall be enforced, but to decide whether there ever was a contract made in the case. To assume that there was a contract, which contract is about to be violated by the decision of the State Court of Iowa, is to beg the very question in dispute. In deciding this question the court is called upon, as the court in Iowa was, to construe the Constitution of the State. It is a grave error to suppose that this court must, or should, determine this upon any principle which would not be equally binding on the courts of Iowa, or that the decision should depend upon the fact that certain parties had purchased bonds which were supposed to be valid contracts, when they really were not."

"The Supreme Court of Iowa is not the first or the only court which has changed its rulings on questions as important as the one now presented. I understand the doctrine to be in such cases, not that the law is changed, but that it was always the same as expounded by the later decision, and that the former decision was not, and never had been, the law, and is overruled for that very reason. The decision of this court contravenes this principle, and holds that the decision of the court makes the law, and, in fact, that the same statute or Constitution means one thing in 1853, and another thing in 1859. For it is impliedly conceded, that if these bonds had been issued since the more recent decision of the Iowa court, this court would not hold them valid."

We have quoted thus lengthily from this dissenting opinion, because, in our judgment, it presents a clear and conclusive statement of the rules which ought to be adopted by the courts in determining this class of questions.

The proposition announced by Judge Miller, that a decision of a court is not a law, but merely the evidence of what the law is, and that when it is overruled it is not a change of the law, but a declaration and judicial ascertainment that it never was the law, is supported by ample authority. (1 Kent, 473; Ram on Judgments, 47; Yates v. Lansing, 9 Johns., 395; Cooley Const. Lim., 65; Broom's Legal Maxims, 151; Bradshaw v. Duluth I. M. Co., 53 N. W. Rep., (Minn.) 1066; Allen v. Allen, 95 Cal., 184, 16 Law. Rep. Ann., 646; Stockton v. Dundee Mfg. Co., 22 N. J. Eq., 56; Bishop on Contracts, sec. 569.) We believe this to be the true rule, and that a decision of a court is not, in fact, a law, and, if erroneously made, cannot make a law; it is simply the declaration of a court as to what the law is in the opinion of the judges. In the nature of things, judges are sometimes in error, and when that error is discovered, either by the same judges or their successors, it becomes a question as to whether or not, under all the circumstances, the rule of stare decisis shall be applied to that case. If the court stands by the decision, the error is perpetuated as being a less evil to the public than to restore the law in its correctness. If the

erroneous decision is overruled, it is then as if it had never been made, and the law is to be considered as declared in the later opinion.

Under the proposition contended for by the appellant, this court is called upon to hold that a decision of the Supreme Court of a State, although erroneously made, could give validity to a statute which the Legislature had no power to enact, and thereby deprive the citizens of Texas of their constitutional right of exemption of their homesteads from this class of charges. The power to change the Constitution of the State resides in the people themselves, and no change can be made in that instrument except by their approval. How then can a court, which is created by the Constitution, exercise the sovereign power of amending or altering that instrument when no such power has been delegated to it. It is also claimed that this court should declare the decision in the case of Lufkin v. Galveston valid and binding as to all contracts made subsequent to its promulgation and prior to the time when it was overruled. If that decision was ever the law, then this court should not have overruled it, either upon principle or policy, because, if it was sound as a matter of law, the court had no authority to change it; and if it was the law as to contracts made and rights accruing under it, then it would be just as good law for all time to come to other persons who might contract with reference thereto. If the Supreme Court had the right to say, that those people upon whose property burdens had been placed, as in this case, under the decision referred to, must bear that burden and be deprived of the constitutional protection, then this court had as much authority to say that the people in all future time should suffer the same deprivation of their constitutional rights.

Such a decision as that sought would be violative of the fundamental principles of our jurisprudence and an assumption of power forbidden to be exercised by the court, and would involve the administration of justice in many and insurmountable difficulties; but we will not pursue this part of the case farther. We believe that we must do one of two things,— either overrule Higgins v. Bordages and restore Lufkin v. Galveston, or we must maintain Higgins v. Bordages and let the other case stand overruled and as if it had never been made. We see no reason for changing our opinion as to the proper construction of the Constitution, and we therefore stand by the last decision.

The policy of conferring upon this court the power to limit its decisions to the future, is a question for the people, and we cannot under any notion of injustice overstep the constitutional limitation to our power, no matter howsoever desirable the departure might be.

It is now well settled that, in the absence of any limitation in the Constitution of a State, the Legislature of such State may authorize a municipal corporation to assess upon the owners of abutting property the cost of improving the streets, and may create a lien upon such property to secure the payment of the assessment so made. There is, however, some conflict in the authorities as to whether the Legislature of a State, when not authorized by the Constitution to do so, may empower a municipal

corporation to make the cost of such local improvements upon the street a charge against the person of the owner as well as a lien upon property abutting thereon.

Mr. Cooley in his work on Taxation, page 674, seems to take position against the existence of such power in the Legislature, but admits that the weight of authority is in favor of it. The number of cases which directly hold the affirmative of the proposition or in which the right to collect such assessment from the owner has been enforced without question are too numerous to admit of the citation of any large proportion of them in this opinion. We note the following cases as sustaining the affirmative of the proposition: Muscatine v. Railway, 79 Iowa, 646; Hazzard v. Heacock, 39 Ind., 172; Schumm v. Seymour, 24 N. J. Eq., 143; Broadway Baptist Church v. McAtee, 8 Bush., (Ky.) 508; (8 Am. Rep., 480).

In support of his text, Mr. Cooley cites Taylor v. Palmer, 31 Cal., 240; Carlin v. Cavender, 56 Mo., 286; Macon v. Patty, 57 Miss., 378; Craw v. Tolono, 96 Ill., 255; Wolf v. Philadelphia, 105 Pa. St., 25. In the cases cited from the Supreme Courts of California and Illinois, the decisions rest upon provisions in the Constitutions of those States which are construed to limit the power of the Legislature to enforcing a payment of such assessments by sale of the particular property, and are therefore not in point upon the question now under discussion.

Wolf v. The City of Philadelphia, 105 Pa. St., 25, seems to be based upon a construction of the statute of that State and not upon any general principle denying power to the Legislature to make the assessment a personal charge. In The City of St. Louis v. Allen, 53 Mo., 44, it is held, broadly, that without constitutional authority the Legislature has no power to authorize a municipal corporation to make the cost of local improvement a personal charge against the owner of the abutting property. Macon v. Patty, 57 Miss., 378, follows the decisions in the State of Missouri, holding the same doctrine. We have found no other authorities sustaining Mr. Cooley in his position and we conclude that, it being conceded that the Legislature may authorize a municipal corporation to make an improvement in the streets of a town or city and upon the alleged ground that it is a benefit to the abutting property charge the cost to the owner and enforce it against such abutting property, there is no sound reason why the benefit so conferred will not as well sustain a personal liability as it will a charge upon the particular property, because the benefit to the property is compensation to the owner equally, whether the cost be collected from the particular property or from him personally. The reasoning of the Supreme Court of Kentucky in the case of Broadway Baptist Church v. McAtee, cited above, seems to be a satisfactory answer to all objections that can be made to the exercise of that power. The court said: "The Legislature having the power to impose a taxation cannot be restricted in determining the mode of its collection, nor will this construction enable the city, in any case, to extort from property owners, under the guise of taxation, more than the value of the property subjected directly to the tax."

Objection is made, that the cost of the improvement might exceed the value of the property and thus the property be sacrificed and the owner compelled to pay the cost out of his general estate, which was not benefited. This is a contingency which is possible, but not probable, and therefore too remote to govern in establishing a general rule of law upon any subject. What remedy the owner might have in such a case, it is not now necessary for us to consider.

To the first question, we answer, that the lien claimed by the appellant. against the homestead of appellees in this case, under the facts stated by the court, should not be enforced.

To the second question, we answer, that if the terms of the charter of the City of Houston empowered that city to make the cost of such improvement a personal charge against the owners of the property, and if the city has done so, then the appellees would be liable for the cost of the improvement so made, although it cannot be enforced against their homestead.

Delivered December 7, 1896.

### ON MOTION FOR RE-HEARING.

BROWN, Associate Justice.—For the purpose of filing an amendment to our answers heretofore filed to the questions certified in this case, the motion for rehearing is granted.

The second question propounded by the court reads as follows: "In case no lien should be enforced against the homestead of appellees, are they or the appellee Henry W. Cortes personally liable for the amount of the certificates?"

Our attention has been called to the provision of the charter of the. City of Houston which declares that act to be a public law, therefore it is the subject of judicial cognizance.

By Act of the 21st Legislature, approved March 15, 1889, section 23 of the original charter of the City of Houston was amended so as to embrace several sections in which the power to make local assessments for street improvement is conferred upon the City Council of that city and the manner in which that power is to be exercised is regulated. Provision is. made for the payment of so much of the cost of such local improvement. as shall be charged against the owner of the abutting property in four equal annual installments, and in such case it is provided that a certificate shall be issued for the amount chargeable against each lot or block, which shall state the amount to be paid each year, the name of the owner, and describe the lot, and among other things not necessary to mention, the certificate is required to state "that said sum of money is a tax against such property owner, named therein, and a lien upon the property described." The charter of the city contains this clause: "Should the property owner fail to pay the amount of said certificate when the same becomes due or when any installment provided for in the same becomes

due, the owner thereof may institute suit for the enforcement of the tax and the foreclosure of the lien provided for in any court having jurisdiction." (Special Laws 21st Leg., p. 104.)

The statement accompanying the certified questions contains this language: "The assessment was made and the improvement certificates were issued in compliance with the said charter so as to make them a lien on the land except for the fact that it was the homestead of the appellees." Under the terms of the charter as above quoted, whenever the assessment constitutes a lien upon the property it is likewise a personal charge against the owner of the property, and the right of personal action is given against the owner named in the certificate upon failure to pay, as well as a foreclosure of lien. As we have before held, it was within the power of the Legislature to confer this authority upon the city council, and having conferred it, the personal responsibility attaches, although the property is not subject to the lien by virtue of the constitutional exemption of the homestead.

In lieu of the answer to the second question heretofore filed, we answer, that the appellee Henry W. Cortes, being the owner of the property at the time the assessment was made, is personally liable for the amount of the certificates issued by the city council by virtue of said assessment. Mary M. Cortes, being a married woman, is not liable personally for such assessment.

---

# JANUARY, 1897.