### John P. Duke et al., Appellees, v. Tom Olson, Appellant.

### Gen. No. 30,596.

1. CONFLICT OF LAWS—*what law governs liability of stockholder to creditors of banking corporation of sister state.* Where a resident of this state acquires stock in a banking corporation of a sister state, he thereby agrees to be obligated to creditors of the bank to the extent of the liability imposed by the statutes of that state, to be enforced as provided by the laws of that state, regardless of the place of his residence.

2. BANKS AND BANKING—*contractual nature of stockholder's liability under statute governing banking corporations.* The liability of a stockholder of a bank of a sister state to an assessment equal to the amount of his investment in such stock, although based upon the statutory provision stating such liability, is contractual in its nature, and enforceable as any other contract in the courts of this state.

3. COURTS—*jurisdiction of municipal court of Chicago over action to enforce liability of stockholder of bank of sister state.* The municipal court of Chicago has jurisdiction of an action by the banking commissioner of a sister state to enforce the double liability of a stockholder of a bank of that state created by the statute under which such bank was organized, the obligation being contractual in its nature.

4. CORPORATIONS—*when sale of stock of foreign corporation not in violation of Blue Sky Law.* Where a purchase of stock in a foreign corporation by a resident of this state was induced by

Duke v. Olson, 240 Ill. App. 198.

the representations of a relative of the purchaser, also a resident of the state, who had become interested on his own account by reading a circular descriptive of such stock handed to him by a fellow employee, none of such intermediaries being authorized to sell stock or to solicit subscriptions therefor by the corporation, and the sale being consummated by the sending and acceptance of a telegraphic order, the transaction was not in violation of the Illinois Securities Law.

5. COURTS—*controlling effect of decision of court of sister state modifying rule of liability of stockholder of bank of that state under governing statute.* The fact that at the time a resident of this state became a stockholder of a bank of a sister state it was judicially determined in that state that under the governing statute the liability assumed by such stockholders was subject to certain limitations, does not entitle the stockholder to the benefit of such limitations, in an action to enforce his liability under that statute, where prior to the institution of the action the courts of that state had abandoned their conclusion as to such limitations and had announced a rule eliminating them.

6. BANKS AND BANKING—*presumptive necessity of action by officer of sister state to enforce liability of stockholder of bank of such state.* In an action to enforce the liability of an Illinois stockholder of a bank of a sister state, based upon a statute of that state authorizing such enforcement by the bank examiner as soon after taking possession of the bank as in his judgment may be necessary, it must be assumed that the official bringing the suit has proceeded according to law, and the question whether the condition of the bank necessitated the enforcement of such liability is not open to inquiry.

7. CONSTITUTIONAL LAW—*impairment of obligation of contracts by judicial action.* Constitutional provisions with reference to statutes impairing the obligation of contracts do not apply to interpretations of the law by judicial decision.

Appeal by defendant from the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Affirmed. Opinion filed March 29, 1926.

ALBERT FINK and FRANCIS M. LOWES, for appellant; HENRY N. SHABSIN, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT, for appellees.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is a suit brought to enforce double liability of a stockholder of a bank, tried by the court, in which judgment was against the defendant for $1,244.16, from which he appeals.

Plaintiff Duke is supervisor of banking of the State of Washington, and Farnsworth, the other plaintiff, is director of taxation and examination of Washington. The two are the successors in office of the bank commissioner of the State of Washington. They will hereinafter be called the bank commissioner. Defendant is a resident of Illinois and a stockholder of the Scandinavian-American Bank of Tacoma, Washington, organized under the laws of Washington and authorized to do a general banking business at Tacoma.

The statement of claim alleged that on January 15, 1921, it appeared to the bank commissioner that the bank was insolvent and thereupon he took possession of the assets and affairs of the said bank for liquidation; that the defendant on February 10, 1920, bought 10 shares of the capital stock of the said bank and is still such a stockholder; that section 11 of Article XII of the Constitution of Washington is as follows: "Each stockholder of any banking corporation or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements for such corporation or association accruing while they remain such stockholders to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares"; that section 285 of the statutes of Washington is as follows: "The stockholders of every bank and trust company shall be individually and personally liable, equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation accruing while they remain as stock-

holders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares.  *  *  *  Such liability may be enforced by the examiner as soon after taking possession of any bank or trust company as in his judgment the same may be necessary.  The failure of the stockholders of any bank or trust company immediately upon possession being taken by the examiner to make good all impairment of its assets shall be conclusive evidence that the enforcement of double liability is necessary''; that since January 15, 1921, the stockholders have failed to make good any part of the impairment of the bank assets; that said bank commissioner determined it was necessary to enforce the double liability of the stockholders to the full amount of 100 per cent of the par value of the stock, that is, $100 on each and every share thereof for the purpose of paying its debts; and that defendant was duly notified of this assessment on each share of stock owned by him and demand was made that it be paid, which was refused.  There were also other allegations.

Defendant argues that this provision of the Washington statute being a special statutory remedy of another State the courts of Illinois will not enforce it against a citizen of this State.

The Federal statute in relation to national banks is the genesis of the Washington statute.  *Duke v. Force*, 120 Wash. 599.  By section 5234 of the United States Rev. St. the comptroller of the treasury, when he deems it necessary, may appoint a receiver of a national bank with power to take possession, etc., and enforce individual liability of the stockholders.  In passing upon this statute in *Kennedy v. Gibson*, 75 U. S. 498, it was said:

''It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall

be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him."

To the same effect is *Casey v. Galli,* 94 U. S. 673; *United States v. Knox,* 102 U. S. 422.

The Washington Supreme Court in passing upon its statute followed the conclusions of the Federal Court. In *Hanson v. Soderberg,* 105 Wash. 255, the court said:

"The state bank examiner is clothed with power to finally determine the necessity for making assessment upon the stock of an insolvent bank, and the amount of such assessment, without any judicial inquiry into the matter."

The court also held against the objection that the statute conferred upon a ministerial officer judicial power, citing *Bushnell v. Leland,* 164 U. S. 684; *Ex parte Chetwood,* 165 U. S. 443.

*Duke v. Force, supra,* was decided upon the assumption that the state bank examiner had this power, and to the same effect was *Duke v. Johnson,* 123 Wash. 43, where it was said:

"The conclusion, therefore, is that, upon the failure of a state bank, the then real holders of stock in that institution are liable up to an amount equal to the par value of their stock for all contracts, debts, and engagements of the bank which become due upon its failure; that this obligation is a secondary one, enforceable by the state banking authorities."

That the bank commissioner has authority under the statute to collect the superadded liability of stockholders residing in Washington without any preliminary judicial determination, seems to be conceded by the defendant, but it is argued that before the commissioner can proceed against a stockholder-resident of this State to enforce a special statutory remedy of the

State of Washington there must be a preliminary judicial determination of the condition of the bank and the necessity for and the amount of any assessment against the stockholder.

The greater weight of authority holds that the liability of a subscriber to the capital stock of a bank is contractual. In I Miche on Banks and Banking, page 163, it is said:

"Bank stockholders' individual liability, though statutory, is contractual in its nature. It is legal and not equitable. It is based upon the contract of subscription, an implied term of that contract being the declaration of the statute that a certain contingent liability should follow the subscription."

This is also the conclusion of the compiler as noted in 33 L. R. A. (N. S.) 898. In Morawetz on Private Corporations, section 870, it is said, in substance, that, if the company's charter provides that the shareholders shall be subject to a special individual liability to creditors, persons becoming shareholders agree to become liable individually to the amount specially provided for in the charter or Incorporation Law, to all persons giving credit to the corporation and that the parties contracting with the corporation do so upon the faith of this liability.

In *Bell v. Farwell*, 176 Ill. 489, treating of the liability of an Illinois stockholder in a Kansas bank, sued on in Illinois to enforce his liability, it was said that while the liability of the stockholder is one imposed by statute it is at the same time a liability arising out of contract. In *Howarth v. Lombard*, 175 Mass. 570, the character of such liability is discussed at length with the conclusion that the bank stockholder residing in Massachusetts must be regarded as having agreed or contracted to be subject to the obligation imposed by the statute of Washington, including the liability for an assessment. In the recent case of *Hirning v. Hamlin* (Ia.), 206 N. W. 617, it was held that such obligation

upon the stockholder was contractual in its nature and enforceable as such in the courts of other States, citing a large number of decided cases. It was there held that the provisional liability of the stockholder was just as obligatory as his original liability to pay for stock, and that: "It would be intolerable that the rights and obligations of stockholders of corporations should vary according to or depend upon the laws of the *lex fori* or the *lex domicilii*. It is well settled therefore that the law of the state creating the corporation controls in the determination of their rights and obligations, though not necessarily the remedy."

The cases cited to the contrary by defendant are not in point. *Smith v. Kastor,* 195 Ill. App. 458, was an action to enforce liability arising out of the unlawful acquisition of stock. *Young v. Farwell,* 139 Ill. 326, was a bill in equity to enforce a stockholder's liability against an Illinois resident holding stock in a Michigan corporation before there had been any proceeding in Michigan to determine the condition of the corporation.

It must be assumed that when defendant subscribed for his stock he understood the constitution and statute relating to banks as construed by the court of Washington. He must be presumed to have agreed that the bank commissioner was clothed with power to determine the necessity for making an assessment upon his stock and the amount of such assessment without any judicial inquiry into the matter. He acquired the stock in contemplation of a possibility of such an assessment being made in this manner. Furthermore, it clearly would not be just either to creditors or stockholders to require the character of the proceedings by the bank commissioner to depend upon the respective residences of stockholders.

Upon reason and precedent we hold that when defendant acquired his stock he agreed to be obligated to the extent of the liability imposed by the statute of

Washington, to be enforced in the manner provided by the laws of that State wherever he may reside.

What we have said disposes of the objection to the jurisdiction of the Municipal Court of Chicago, which has jurisdiction of suits upon contracts.

Defendant contends that the stock was sold to him in violation of the Illinois Securities Act, sometimes called the Blue Sky Law, and therefore such sale was void. This act renders void sales of a foreign corporation made in Illinois unless certain statements and documents relating to the company are filed with the secretary of state. The record does not disclose that the stock in question was offered for sale or sold in Illinois.

In the fall of 1919, William C. Juhnke, a defendant in a similar case, which has been consolidated with this for hearing, saw a circular in his office at the Union Station in Chicago, where he was employed by the Chicago, Milwaukee & St. Paul Railroad Company, it was given to him by one of the dining car stewards working for this railroad. This circular purported to have been issued by the Scandinavian-American Bank and contained a statement of the business and of an authorized increase of the capital stock with the price of the new stock, and concluded: "Your subscription solicited. Make application to F. C. Hewson, Manager Bonds and Investments, Scandinavian-American Bank of Tacoma." Juhnke induced his father-in-law, this defendant, to buy some of the stock, and Juhnke wired to the bank at Tacoma for fifteen shares, five for himself and ten for Olson. The bank acknowledged receipt and sent subscription blanks to Juhnke. Herman Juhnke, Sr., a defendant in another of the consolidated cases, testified that his son William "said he thought it was a good thing. He did not charge me anything for helping me in the matter. He was not working for the bank at all."

The purchase of stock by defendant and others was

induced as a friendly act by William C. Juhnke, who had no authority from the bank to solicit subscriptions. Under similar circumstances, it was held that there was no violation of the Blue Sky Law. *People v. Hill Top Metals Min. Co.*, 300 Ill. 564.

Lastly, it is contended that the rights of the defendant are to be determined by the law as it was judicially construed by the Supreme Court of Washington at the time when he purchased his shares of stock; that in *Shuey v. Holmes*, 21 Wash. 223, in construing the constitution and statute upon which this suit is based, the Supreme Court held that the stockholder was obligated only for contracts and debts arising after he acquired stock and not for those created prior to the day he became a stockholder; and that it was therefore necessary to segregate the debts and contracts existing before the time he became a stockholder from those accruing afterwards. However, in *Duke v. Johnson, supra,* the conclusion in the *Shuey* case was overruled, the court holding specifically that the conclusion in the *Shuey* case was erroneous and not justified by the ordinary meaning of the language used in the constitution and statute and by the previous decisions of that court.

There is considerable evidence in the record tending to show the condition of the bank at the time defendant acquired his stock. This involves a more or less complicated statement of assets and liabilities, and based upon these figures counsel argue in direct contradiction to each other as to what they show with reference to the condition of the bank. This illustrates forcibly the impracticability of deciding this question in each suit brought to enforce the stockholder's liability. A defending stockholder in one case might prevail in this respect and another one might lose, and the uniformity of the assessment would be destroyed by the variant results of the trials. The language of the court in *Duke v. Johnson, supra,* upon such a situation is

pertinent. In holding that the stockholders are liable for all contracts and debts, whenever accruing, the court said that any other interpretation of this provision would be "visionary and futile."

"Under that other interpretation, creditors of a failed institution would be, in a great majority of cases, and in practically all cases where banks had had an existence for some period of time and their stock had been dealt in to any great extent, deprived of any benefit from the enforcement of the superadded liability. The litigation would be interminable. The results would be almost *nil*, and it would be a practical impossibility to determine the liability of the various persons who had been stockholders during the entire existence of the bank in question. Death, insolvency, removal from the state—all the various accidents and changes coming from lapse of time and altered conditions—would make a recovery of any substantial amount from former owners of the stock a matter of pure speculation, and, as a matter of fact, the attempt to collect such liability would cost more in the preparation and trial of such suits than could be recovered in the event judgments were obtained."

We must assume that in this case the bank commissioner proceeded according to law. It would result in confusion to require the trial court here in each suit against a stockholder to investigate the condition of the bank for the purpose of ascertaining whether or not the commissioner made the proper assessment.

It has been held that a judicial decision is not a law and that a change of decision is not a promulgation of a new law. Hence, constitutional provisions with reference to statutes impairing the obligations of contracts do not apply to judicial decisions. *Alferitz v. Borgwardt,* 126 Cal. 201; *Swanson v. City of Ottumwa,* 131 Ia. 540; *Storrie v. Cortes,* 90 Tex. 283, 38 S. W. 154. In *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.,* 125 U. S. 18, the court held:

"In order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the State, and not at the decisions of its courts."

We are of the opinion that the law and the record justified the conclusion of the court, and the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and JOHNSTON, J., concur.