HILL v. HUBER et al. (No. 1945.)

(Court of Civil Appeals of Texas. Texarkana. March 14, 1918.)

1. BROKERS ⊕═86(4) — ACTION FOR COMMISSION—SUFFICIENCY OF EVIDENCE.
   Evidence *held* to sustain finding that plaintiffs were the efficient procuring cause of the exchange of properties between defendant and another.

2. BROKERS ⊕═56(2)—RIGHT TO COMMISSION.
   An employer who concludes a transaction with a party procured by a broker is not relieved from liability for commissions because he was ignorant at the time he dealt with such party that such party was procured by the broker.

3. BROKERS ⊕═65(4) — ACTION FOR COMMISSION—DEFENSES.
   That, pending negotiations for exchange of property, plaintiffs' brokers paid part of the expenses of broker for the other party to the exchange in showing defendant the land, would not bar action for commission, where it did not appear that plaintiffs undertook to represent such other party.

Appeal from District Court, Navarro County; H. B. Davis, Judge.

Suit by P. W. Huber and another against B. W. D. Hill. Judgment for plaintiffs, and defendant appeals. Affirmed.

The appeal is from a judgment in favor of appellees (who were the plaintiffs in the court below) against appellant for $400. The facts material to the controversy between the parties were, it appears, substantially as follows: Appellee Huber was in business as a real estate broker in Waco. Appellant, Hill, lived at Dawson (30 miles from Waco), where he owned a stock of merchandise. Desiring to exchange the merchandise for land, Hill, in September, 1914, "listed" it with Huber. The latter, noticing in a newspaper the advertisement of Guy Tarlton, a real estate broker at Hillsboro, offering to exchange land for merchandise, and knowing that appellee Casey, who, like himself, was a real estate broker in Waco, was well acquainted with Tarlton, arranged with Casey to take up with Tarlton the matter of exchanging Hill's merchandise for Tarlton's land. In response to a letter from Casey, Tarlton went to Waco, where he conferred with Huber and Casey. Tarlton advised them that he represented one Parr, who owned land he wished to exchange for merchandise. As a result of the conference, and at the instance of Huber and Casey, Tarlton went to Dawson, where he saw Hill and endeavored, but failed, to trade him the Parr land for the merchandise. Hill knew from Huber before Tarlton reached Dawson that the latter was coming there to see him about making such an exchange, and Tarlton, when he reached Dawson, explained to Hill, Tarlton testified, that he was there because he had learned from Huber and Casey that he (Hill) wished to exchange merchandise for land. Failing in his effort to trade the Parr land for the merchandise, Tarlton told Hill he represented owners of other lands, but, it seems, did not then endeavor to negotiate with Hill about any of those lands. Tarlton returned to Waco and reported to Huber and Casey his failure to exchange the Parr land for the merchandise. As a result of a conference then had between him and Huber and Casey, Tarlton on the day (that is, the day he returned to Waco from Dawson) returned to Dawson and took up with Hill the matter of exchanging for the merchandise land in Jackson county belonging to one Sims, whom Tarlton represented. The negotiations then commenced resulted finally in a deal between Hill and Sims, whereby the former exchanged his stock of merchandise for Jackson county land belonging to the latter. Pending the negotiations Tarlton went to Jackson county to show Hill the land, and in compliance with an agreement between them Huber and Casey paid to Tarlton two-thirds of the amount of the cost to him of his trip to Jackson county. From the time when Tarlton commenced the negotiations with Hill to trade him the Sims land until the time when the contract between Hill and Sims was signed there was no communication between Hill and Huber and Casey. After the contract covering the exchange agreed upon had been reduced to writing, but before it was signed by either Sims or Hill, the latter, Tarlton testified, asked him if he (Tarlton) claimed a commission from him (Hill). Tarlton replied that he did not, but that he understood Huber and Casey were his (Hill's) agents, and that he owed them a commission. Hill replied that he did not owe Huber and Casey anything on the deal. Subsequently to the time when Hill and Sims entered into the contract, and pending a compliance, it seems, by Sims with some of its terms, several letters in regard to commissions claimed by Huber and Casey passed between them and Hill. April 12, 1915, Hill, in reply to a letter he had from Casey about paying him and Huber a commission, wrote Casey as follows:

"In reply to yours of the 10th inst. will say that you and Mr. Huber in considerable hurry. In the first place Mr. Huber did not inform me that there was a man by the name of Sims. It seems that you and he think you made the trade. It is difficult to understand how you could trade for me and not let me know you were making it; however, the trade has not been consummated, as you say you did it. Mr. Sims and I have not yet completed the trade. Mr. Sims has not complied with all agreements; think he will in a very few days. When I pay commissions I never was asked before till the trade was completed. When the deal is through I intend to take up the matter with Huber and pay him what is due him."

April 29, 1915, Hill wrote Huber as follows:

"It is true I have possession of the land in a way, Mr. Sims is to furnish abstract, which he has not done to the present; there are several details to work out. You know if the title is not good that it will have to be worked out before I can close the trade. He says he can furnish good title, which his abstract will show when he gets it. I wrote Floyd Casey when the deal was closed I would take the matter up with you. I suppose he showed you my letter."

June 3, 1915, Hill wrote Huber as follows:

"Your letter seems to be pressing me pretty hard. I wrote you when the deal was closed I would take the matter up with you. I thought when a man made a trade for another he helped him to close the deal. You did not even write me a card about the deal, never even let me know that you had heard of Sims; instead of helping me to get my deal through and trying to be of some assistance to me, you are trying to keep me in hot water all the time. If you sent Sims to me you should have told me and helped me to make the deal, which you never have done. I have failed yet to get Sims to carry out his contract, which I have been trying my best to do. It seems to me you have never turned your hand in the trade to help me to get anything out of Sims, which I have failed to do so far. If getting a man to help me sell means to never get any information regarding the trade from him, and being dunned and harassed for the commission before I can get a trade closed is good business, then I feel you are justified to continue your efforts to get money out of me now. If you know Sims and can get him to come across and comply with his contract, then I feel you have a right to dun me. I wrote your friend Casey, then I wrote you, as soon as I close the deal I would take the matter up with you."

August 19, 1915, Hill wrote Casey as follows:

"Yours received. I wrote you when I closed the deal with Sims I would take the matter up with Huber. It seems to me that if Huber would try to bring Sims across and help me a little instead of trying to harass me he would be acting the better faith. Sims assumed my indebtedness and told me he could take it up when the deal was closed, instead he still owes several thousand dollars. The creditors are refusing to release me until they are paid. If Huber sent him to me it seems he ought to be interested a little in my behalf instead of threatening me the whole time before I get loose so as to be able to get money for my contract. If he was my agent he ought to be willing to help me out of a hole before he makes so many threats."

Richard Mays, of Corsicana, for appellant. C. H. Machen, of Waco, and W. A. Tarver, of Corsicana, for appellees.

WILLSON, C. J. (after stating the facts as above). [1, 2] The finding of the trial court that it was due to Huber and Casey that Hill and Sims met, and therefore that they were the "efficient, procuring cause of the exchange of the properties between Hill and Sims," is attacked as without support in the testimony. We think it has such support. It appeared without dispute that it was due directly to Huber and Casey that Tarlton went, in the first instance, to see Hill about trading him the Parr land, and Huber testified that he sent Tarlton back to see Hill about trading him the Sims land. There was nothing in the testimony indicating that Hill would ever have met Sims and had an opportunity to trade with him as he did but for the acts of Huber and Casey. Certainly, in this attitude of the case, the court reasonably might have found as he did. The contention to the contrary seems to be based mainly upon testimony showing that neither Huber nor Casey ever in any way communicated to Hill the fact that they sent Tarlton to him to propose the exchange finally made, and on the testimony of Hill that he did not know they sent Tarlton to him or had anything to do with the Sims trade. If Huber, employed as he was by Hill to find some one with land he was willing to exchange for the merchandise on terms satisfactory to him (Hill), acting with Casey, was the cause of Sims' taking up with Hill the matter of making the exchange that was made, we think it is no answer to the claim of Huber and Casey for a commission Hill otherwise would have been liable to pay them, to say that Hill was ignorant of the fact that Huber and Casey were the procuring cause of his making the deal with Sims. Bound v. Simkins, 151 S. W. 572; Ross v. Moskowitz, 95 S. W. 86; Id., 100 Tex. 434, 100 S. W. 768; McDonald v. Cabiness, 98 S. W. 943; Id., 100 Tex. 615, 102 S. W. 721; McKinney v. Thedford, 166 S. W. 443. We do not understand the Supreme Court to have held (in Goodwin v. Gunter, 195 S. W. 848, cited by appellant) to the contrary of the rule recognized by the

weight of authority in this country (4 R. C. L. 430), and in the cases cited above decided by courts of this state, that the employer who concludes a transaction with a party procured by his broker is not relieved of liability to the broker because he was ignorant at the time he dealt with him of the instrumentality of the broker in procuring the party.

[3] It is insisted it appeared as a matter of law that Huber and Casey were not entitled to claim a commission of Hill. The contention is predicated, it seems, on the finding that Huber and Casey agreed to pay, and did pay, two-thirds of the amount of the expense of Tarlton's trip to Jackson county to show Hill the Sims land, and on a rule of law stated as follows in 9 C. J. p. 540:

"A broker who is employed to exercise his ability or discretion on behalf of his principal cannot, without his principal's knowledge, agree to represent the other party to the transaction; such an agreement is contrary to public policy and unenforceable, although the original principal is not injured, the broker intends no wrong, and the other party acts in good faith."

If it should be assumed, in the absence, as is the case, of anything in the record showing that Huber and Casey were employed to represent Hill in making the exchange, and not merely as middlemen to bring Hill and one ready to exchange land for merchandise together (9 C. J. p. 576), it would nevertheless appear, we think, that the rule had no application to the case, because it did not appear that Huber and Casey undertook to represent Sims in the transaction. The agreement between them and Tarlton that they should pay part of the expense of the trip of the latter to Jackson county may have been evidence of an obligation incurred by Tarlton to them or Hill, but certainly it was not evidence of an obligation to Sims on the part of Huber and Casey inconsistent with the duty they owed to Hill.

We do not think error requiring a reversal of the judgment is shown by any of the assignments. Therefore it is affirmed.