## COMMERCE FARM CREDIT CO. v. TORRANCE. (No. 676.)

Court of Civil Appeals of Texas. Waco.

May 24, 1928.

Rehearing Denied June 28, 1928.

1. Brokers ⬅88(1)—Refusal to give peremptory charge in action against credit company for commission on loan by company held warranted by evidence.

In action against credit company for commission on loan made by credit company, refusal to give peremptory charge in favor of credit company *held* warranted by evidence.

2. Appeal and error ⬅882(11, 14) — Credit company, requesting submission of issues, held estopped to assert that issues were not raised by evidence, or that finding of jury thereon was unsupported.

In action against credit company for commission on loan, where credit company requested court to submit issues of procuring cause and abandonment, and such issues as prepared and presented by credit company were adopted by court and incorporated in charge, *held*, that credit company was estopped to claim that such issues were not raised by evidence, or that finding of jury thereon was without support.

3. Brokers ⬅8(3)—Trial ⬅350(4)—Evidence justified submission of issue with reference to agreement to pay commission on loan, and sustained jury's finding that credit company so agreed.

In suit for commission on loan made by credit company, evidence *held* sufficient to justify submission of issue with reference to credit company's having agreed to pay commission of 2 per cent. for procuring such loan, and to sustain jury's finding that it did.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Suit by J. R. Torrance againts the Commerce Farm Credit Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Coker & Wilson, of Dallas, and Trippet, Boggess & Sheehy, of Waco, for appellant.

Bryan & Maxwell, of Waco, for appellee.

GALLAGHER, C. J. This suit was instituted by appellee, J. R. Torrance, against appellant, Commerce Farm Credit Company, a corporation, for the purpose of recovering $1,700 as a commission on a loan made by appellant to H. M. Minier and his associates. The case was tried to a jury, and submitted on special issues, in response to which the jury found, in substance, that (a) appellee was the procuring cause of effecting the loan made by appellant to Messrs. Minier, Bolton, and Cameron upon the tract of land in question; (b) appellant agreed with appellee to pay him 2 per cent. of such loan for procuring the same; (c) the negotiations initiated by appellee in attempting to secure said loan for said Minier, Bolton, and Cameron were not abandoned by him when he was notified that said parties had applied to Gum Bros. for such loan. The court entered judgment on said findings in favor of appellee against appellant for the sum of $1,700, with interest from the date thereof.

## Opinion.

[1] Appellant presents as ground for reversal the action of the court in refusing its request for a peremptory charge in its favor. Appellant contends in this connection that the undisputed testimony shows conclusively that appellee was not the procuring cause of its making said loan to Messrs. Minier, Bolton, and Cameron; that there is no testimony showing or tending to show any contract with appellant, express or implied, for appellee to procure such loan; and that the undisputed testimony shows that appellee had no such contract with appellant.

The undisputed testimony shows that Messrs. Minier, Bolton and Cameron owned a large tract of land in Milam county; that they listed it for sale with appellee, who was a land and loan broker; that appellee succeeded in interesting Messrs. Reed and Robinson, of Austin, in the proposed purchase of said land; that said proposed purchasers indicated they would not purchase the same unless they could obtain a loan thereon of not less than $75,000; that appellant is a corporation, having its principal office in Dallas, but having at that time as agent or employee a Mr. Mayfield, who maintained an office in Waco; that, with a view of aiding said proposed purchasers in securing such loan, appellee approached said Mayfield and explained the situation to him; that appellee and said Mayfield then went together to Milam county and inspected said land; that said proposed purchase by said parties was never consummated; that appellant subsequently made a loan of $85,000 to Messrs. Minier, Bolton, and Cameron on said tract of land; that said loan was made on the personal application of Mr. Minier, and that such application was presented to appellant some six months after the first inspection of said land by said Mayfield.

Appellee testified in this connection that, after he had taken Mr. Mayfield down to inspect the land, he was called to Mr. Mayfield's office and found Mr. Peterson, appellant's vice president and general manager, there; that Mr. Peterson urged him to get the loan; that he took Mr. Peterson down and showed him the land, and that Mr. Peterson assured him that the loan would be made for the amount necessary and urged him to press the matter; that on this occasion he discussed with Mr. Peterson his brokerage on said loan; that Mr. Peterson

told him he knew he was expecting 2 per cent.; that said proposed sale to Messrs. Reed and Robinson was pending for some time on account of the absence from the city of Messrs. Bolton and Cameron; that Mr. Minier finally told him that they had decided not to make the proposed sale; that he had previously disclosed to Mr. Minier that said proposed purchasers had arranged to secure said loan; that Mr. Minier told him they would take care of him; that they would take the loan he had negotiated, and asked him who was to make the loan; that he informed Mr. Minier that appellant was to do so.

Appellee further testified that he was the first person to approach Mr. Minier about a proposed loan on said land; that both Mr. Minier and Mr. Mayfield told him that there had been no negotiations between appellant and Mr. Minier prior thereto; that after the sale of said land was abandoned Mr. Minier promised to give him an application for said loan; that Mr. Mayfield was urging him to secure the same; that he also received a letter or letters from Mr. Peterson, urging him to secure such loan; that Mr. Peterson again agreed to pay him 2 per cent. commission for procuring the same; that later Mr. Minier assured him he was practically ready to make application therefor; that actual negotiations continued until Mr. Minier suddenly informed him that he had given the loan to Gum Bros.; that he dropped the matter temporarily, but that Mr. Minier afterwards told him that the proposed loan from Gum Bros. had "blown up," that they were not able to make that large a loan, and for appellee to secure the loan from appellant as originally proposed; and that he then resumed and continued his efforts to close the matter.

Appellee further testified that, when he accidentally learned that the loan had been made by appellant to Mr. Minier and his associates, he immediately called Mr. Mayfield and suggested that he should have a check for his commission; that Mr. Mayfield replied that Mr. Minier, who was in the loan business himself, offered the loan to appellant for a brokerage of only 1 per cent., while appellee was charging 2 per cent.

The testimony here recited is a very brief summary of the salient points of appellee's testimony. On the trial of the case he was examined with reference to every fact recited in minute detail by both parties. There are some slight inconsistencies in his testimony, but in the main it is in harmony with above outline thereof. Appellant lays great stress on a letter which appellee wrote to it, in which he stated he had dropped the matter of negotiating a loan when Mr. Minier informed him that he had given the loan to Gum Bros. Appellee testified in explanation of said letter that such action was temporary only, and that Mr. Minier afterwards re-

newed his promise to take the loan through him. Appellee's testimony was contradicted on practically all material matters by the other parties to said transaction. Appellee's testimony, above quoted, raised the issues of employment and procuring cause. Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848, 849; Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151, 152, 153; Munger v. Hancock (Tex. Civ. App.) 271 S. W. 228, 231, and authorities there cited; Hill v. Huber (Tex. Civ. App.) 202 S. W. 785, 787; Stone v. Cox (Tex. Civ. App.) 244 S. W. 620, 622, and authorities there cited; Thompson v. Ferguson (Tex. Civ. App.) 250 S. W. 204, 205; Masters v. Hunt (Tex. Civ. App.) 197 S. W. 219, 220.

The rule prescribed by our Supreme Court for determining whether a peremptory charge should be given is clearly stated in Harpold v. Moss, 101 Tex. 540, 542, 109 S. W. 928, as follows:

"Harpold testified to the facts substantially as alleged in his petition. Upon the material facts he was flatly contradicted by the testimony of Moss and in some particulars by the testimony of other witnesses. It may be conceded also that Harpold's version of the transaction was not very probable. The error assigned is that the court erred in instructing a verdict. The rule that is applicable to this question is very clearly announced in the case of Eastham v. Hunter, 98 Tex. 560 [86 S. W. 323], in the following language: 'The plaintiffs in error having introduced sufficient evidence to support a verdict in their favor, were entitled to have the issue submitted, no matter how strong the contradictory evidence might be. In determining this question we must consider the evidence in its most favorable aspect for the plaintiffs in error, disregarding conflicts and contradiction; they raised the issue of credibility, which was a question for the jury.' To judge of the credibility of the witnesses and the weight to be given to their testimony is peculiarly the province of the jury. Hence whenever the court undertakes to say that the testimony of a witness is entitled to no credit because it is overborne by contradictory testimony or that it is so contrary to circumstances in proof which render it improbable, it very clearly assumes the function of the jury and its ruling should not be permitted to stand."

Under the test so prescribed, the court did not err in refusing appellant's request for a peremptory charge. Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 315 (writ refused), and authorities there cited; Burroughs v. Smith (Tex. Civ. App.) 294 S. W. 948, 950, 951 (writ refused), and authorities there cited; Richardson v. W. C. Bowman Lumber Co. (Tex. Civ. App.) 274 S. W. 349, 351, and authorities there cited.

[2, 3] Appellant by its three remaining propositions contends that the finding of the jury that appellee was the procuring cause of the making of said loan is against the great weight and preponderance of the evidence, and that the findings that appellant

agreed to pay appellee 2 per cent. commission for procuring the same, and that appellee did not abandon the negotiations initiated by him, in attempting to secure said loan, when notified that application therefor had been made to Gum Bros., are both without any support in the evidence. Appellant requested the court to submit the issues of procuring cause and abandonment, and such issues as prepared and presented by appellant were adopted by the court and incorporated in the charge. In that connection the court defined procuring cause in the identical terms requested by appellant. Having requested the submission of said issues, appellant is estopped to claim that they are not raised by the evidence, or that the findings of the jury thereon are without support therein or contrary thereto. Independent Shope Brick Co. v. Dugger (Tex. Com. App.) 285 S. W. 599, 600, and authorities there cited. While appellant did not request the submission of the issue with reference to appellant's having agreed to pay appellee a commission of 2 per cent. for procuring such loan, the evidence is sufficient to justify its submission and to sustain the finding of the jury thereon.

The judgment of the trial court is affirmed.