## STARK et al. v. R. B. GEORGE MACHINERY CO.

### No. 12513.

Court of Civil Appeals of Texas. Fort Worth.

June 27, 1931.

Rehearing Denied Sept. 19, 1931.

Adams & Jones, of Gainesville, for plaintiffs in error.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, W. D. Garnett, of Gainesville, and O. A. Fountain, of Dallas, for defendant in error.

### CONNER, C. J.

Appellant Stark, hereinafter referred to as plaintiff, instituted this suit on January 2, 1930, against R. B. George Machinery Company, hereinafter referred to as defendant, to recover damages aggregating $659.67. Briefly stated, the plaintiff alleged that on January 27, 1928, he purchased from defendant, through one Adkinson, defendant's sale agent, a Caterpillar tractor at the agreed price of $1,054, which plaintiff paid. Plaintiff alleged that Adkinson represented that the tractor was one that had only been used slightly as a demonstrator machine in and about the Fair Grounds at Dallas, Tex., and reconditioned and practically as good as new, agreeing at the time of purchase to furnish for six months all such worn or useless parts as should be found to be necessary; and further representing that the previous use was so slight that the tractor had not been injured or worn in any respect and would last as long as if new.

Plaintiff further alleged that he knew nothing about tractors of the kind, and relying upon such representations, he received and paid for it and moderately used the same on his farm until about the 15th of September, 1929. That during the first six months after his purchase new parts for parts worn-out at the time of his purchase, of the value of $150, were furnished by defendant, and that during plaintiff's continued use he was required to purchase new parts for old and worn parts for which he paid $244. Plaintiff charged that said representations were false but had been relied upon and he was thereby induced to make the purchase. That notwithstanding the new parts supplied, the tractor became worthless and could no longer be of use; that he thereupon began negotiations with defendant at its Dallas office with a view of trading the old tractor for a new one, when for the first time he learned that Adkinson's said representations were false and that in fact the tractor sold to him had been previously used on the public roads of Lamar county for two years, and that it was old and worn and not worth exceeding $400, the price at which defendant offered to take it on the sale of a new one.

Defendant answered by a general demurrer and a general denial, and specially pleaded that plaintiff's purchase was under and by virtue of a written contract set forth in the answer, which only warranted the tractor for six months, and which provided that the instrument contained "all of the agreements between the parties thereto"; that plaintiff, after a demonstration, had freely accepted and paid for the tractor and later used the same for a long period of time without objection, and hence was estopped from claiming that it was not worth the amount he paid therefor. Defendant also pleaded over to recover $179.85 for unpaid parts furnished for the tractor at plaintiff's request.

The plaintiff replied by supplemental petition that the instrument referred to by the defendant as the written contract of sale was but an order for the shipment of the tractor and did not present the true facts concerning the contract of sale and purchase, and that it was not so intended; that by its terms, as explained at the time, plaintiff understood that he was to get a reconditioned tractor, practically as good as new, and that he did not knowingly sign an instrument containing a provision that it contained all agreements as alleged by defendants, and that if the order did contain any such provision, it was fraudulently concealed from him at the time by defendant's said agent.

The case was submitted to a jury upon special issues, which, together with answers thereto, are as follows:

"1. Did the defendant's agent, A. R. Adkinson, make false and fraudulent representations with reference to the age of the tractor in question and the use to which said tractor had been put at the time the order for said tractor was signed by the plaintiff? Answer: No.

"2. If you answer the question next above 'yes', then answer the following question: Did the plaintiff Stark believe said representations and did he sign the order for said tractor, believing said representations to be true? Answer: Yes.

"2a. If you answer the first question 'yes', then answer the following question: Did the defendant herein deliver to plaintiff Stark a tractor in accordance with and meeting the representations made to plaintiff Stark by said Adkinson? Answer: Yes.

"3. If you have answered the first question 'yes' then answer the following question: Were said representations the cause and reason of the plaintiff Stark agreeing to buy said tractor and signing said order therefor? Answer: Yes.

"4. In view of all the facts and circumstances introduced in the evidence before you, what, in your judgment, was the reasonable market value of said tractor at the time it was delivered to the plaintiff Stark in Gainesville? Answer: $1,054.00.

"5. Do you find from a preponderance of the evidence that the plaintiff H. W. Stark after he knew or had reason to know the actual condition of the tractor in question, waited an unreasonable length of time before complaining about same to defendant? Answer: Yes."

In addition to the findings of the jury, the court also filed conclusions, adopting the finding of the jury in response to special issue No. 1, and finding as a fact that Stark was indebted to the machinery company in the sum of $179.85 for unpaid parts, and thereupon entered judgment that the plaintiff Stark, and some interveners who showed no right of recovery, take nothing by reason of the suit and that the defendant recover said $179.85 and be discharged with its costs. From the judgment so rendered the plaintiff Stark has duly prosecuted this appeal.

■ Appellant's first assignment of error is that: "The trial court erred in overruling the motion for a new trial because the answer of the jury to the first question propounded is not sustained by the evidence and is against the weight of all the evidence offered on the trial."

We have carefully read the statement of facts and have concluded that this assignment must be sustained.

The plaintiff testified, among other things, that Adkinson, defendant's sales agent, having learned that plaintiff was desirous of purchasing a tractor, came to him and said: "I have got the very tractor you want. I've got a tractor that is as good as practically new, that has only been used on the Fair Grounds at Dallas as a demonstrator."

Miss Cina Bartlett, an employee in the office of plaintiff, testified, among other things, that she was present in the office at the time Mr. Adkinson came in and said: "I have a tractor that has been used on the Fair Grounds and worked over that I can sell you for $1,054.00 that is practically as good as new." On cross-examination she said: "I mean to say that is all I heard Mr. Adkinson say. And my testimony is he said the tractor was practically as good as new and I am positive about this. It is not a fact that Mr. Adkinson told Mr. Stark that he had a tractor that was as good a buy as a new one."

A. R. Adkinson, the selling agent, testified for the defendant, among other things, that he was a traveling salesman for R. B. George Machinery Company; that he met Mr. Stark several days before the order was signed for the tractor in question; that he met him at his place of business in Gainesville; that he told Mr. Stark he understood that he was in the market for a Caterpillar tractor and he would like to sell him a tractor, and—"We talked of the merits of the machine and I gave him a price, as I remember, on a new machine; the price for the new machine at that time was $1,980.00 plus $54.00 for belt attachment, that would be $2,034.00 for that size machine. Mr. Stark thought it was a higher price than he wanted to pay. * * * After ten days or two weeks I saw Mr. Stark in his office and told him I understood he would be interested in a second-hand rebuilt Caterpillar tractor. I told him I had one, and it had only been used a couple of days—two or three hours a day—since it had been built, at the Dallas Fair Grounds, and that I considered it a good buy; he wanted to know the price and we agreed on $1,000.00 plus $54.00. * * * The words 'second-hand rebuilt' in the order is written in my hand writing; with reference to my statement to Mr. Stark about the machine being rebuilt I told him it was a second-hand rebuilt tractor; I did not know at the time what amount of service the tractor had had up to the time it was rebuilt. I made no representations to Mr. Stark about the service the tractor had been put to. * * * No, I don't remember the one young lady, Miss Bartlett, that testified here this morning; I heard her testimony that I came there and said to Mr. Stark: 'I have a tractor practically as good as new that has been used on the Fair Grounds and that has been worked over and that I can sell you for $1,050.00.' My best recollection as to whether or not I made that statement, I told him I had a second hand rebuilt tractor selling at what I considered a bargain. It was a good price. In regard to what I told him of the use it had been put to, I told him it had been used at the Fair Grounds probably a couple of days altogether."

The testimony quoted is all that we find in the statement of facts relating to what was said by Mr. Adkinson with reference to the

tractor in question and its use. There is further testimony tending to show that soon after plaintiff purchased the tractor and the use he began to make of it, it became necessary to supply new parts for old and worn-out parts in the tractor, and that during this time new parts, at the price charged therefor by the defendant, aggregating about $600, had been supplied, and that finally it was found that the tractor could not be made to perform its functions and was worthless. There was further uncontradicted testimony in behalf of plaintiff to the effect that the tractor in question previous to its sale to plaintiff had been used on the public roads in Lamar county for some two years in addition to its use on the Fair Grounds at Dallas. We think the jury must have been misled by the wording of the court's special issue without an accompanying definition of legal fraud. In that issue they were required to answer whether or not there was false and fraudulent representations. We think the jury must have concluded that the representations were made, but that the agent in making them did so without knowledge of their falsity, and hence with no intention to deceive.

The answers to the succeeding issues seem to indicate this, for in answer to special issue No. 2 the jury said that Stark believed "said representations and he did sign the order for the tractor, believing said representations to be true." The jury in answer to special issue No. 3 replied that "said representations were the cause and reason of plaintiff Stark agreeing to buy said tractor and signing said order therefor." The jury could not have had in mind representations other than those to which we have referred, for none others were alleged or proven. If in fact Adkinson made the representations as alleged and they were false in material particulars and plaintiff was induced to believe them and was thereby induced to make his purchase to his damage, it is immaterial that the selling agent may have been without a corrupt purpose. The buyer of property may properly look to the owner for information of which he has no knowledge relating to the quality and value of things sold and may rely upon the truth of the statements. See Mitchell v. Zimmerman, 4 Tex. 75–76, 51 Am. Dec. 717; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, and cases cited in 33 A. L. R. page 862, under title "False statements made without knowledge as to whether they are true or false." Such statements when material and false, and when they operate to induce a purchase to the buyer's prejudice, are undoubtedly fraudulent in a legal sense. So that, on the whole, we see no escape from the conclusion before announced that appellants' assignments of error must be sustained.

The conclusion just announced is all that is necessary in fact to require a reversal of the judgment, but in view of another trial we will briefly notice other questions presented by appellants' assignments of error.

For instance, the sufficiency of the evidence to support the findings of the jury in answer to the court's fourth special issue was also questioned. In answer to that issue the jury found that the market value of the tractor in question at the time it was delivered was $1,054. If plaintiff was entitled to recover at all, the measure of his damage was the difference in the market value, if any, of the tractor in the condition in which it was at the time of its purchase and what that value would have been had the tractor been in the condition it was represented to be. Article 4004, Rev. Stats. We find no evidence whatever in the statement of facts relating to the market value of the tractor, if indeed it had a market value at the time of its sale to plaintiff. The question of its market value seems not to have been mooted in any question to any witness. There was evidence, however, tending to show that the defendant machinery company generally kept on hand for sale secondhand reconditioned tractors. If the tractor had a market value at the time of its sale, it should have been shown; if not, then resort of course must be had to the evidence, if any, tending to show its intrinsic value.

Among other things, there was evidence introduced in behalf of plaintiff to show that after repeated efforts to secure satisfactory performance of the tractor in question during the years of 1928 and 1929, an application was finally made to the defendant company to send a man out to inspect it; that in answer to this request a Mr. Jordan, a mechanic, came, inspected the tractor, and made an examination of it, tore it down, and then and there made the following statement about it, to wit: "That it ought to have been junked when it was sold to Mr. Stark; that it was worn out when it was sold to Mr. Stark, and should have been junked." Defendant objected to this statement on the ground that it was hearsay, immaterial, irrelevant, and only an opinion and conclusion of the witness, without preliminary proof of his qualification to give opinion, and for the further reason that the evidence showed that said Jordan was only a mechanic and not a representative or officer of the defendant, and whose opinion, conclusion, and statement would not be binding upon the defendant; and because the same, if made, were made by a mere mechanic who had no authority to make said statement or give said opinion, and defendant was not, and could not be, bound thereby; and because said statement and opinion, if made and given, were controverted and contradicted by the testimony of plaintiff and his

witness, Earl Taylor, to the effect that said tractor had done satisfactory work for some months on plaintiff's farm after its purchase, a portion of which time it was run both day and night.

The court sustained the objections and excluded the testimony, and error is assigned to this action of the court.

We think the evidence tended to sufficiently show that the mechanic Jordan was such an agent or representative of defendant company as authorized proof of the result of his examination. Application was made to the company for an expert to examine and to determine what was wrong with the tractor, why it would not satisfactorily perform, and defendant is in no attitude to complain that the man sent by it was not qualified to perform the service requested. Jordan's statement, therefore, after having taken the machine apart and made the examination, that it was "worn out," was certainly admissible and part of the res gestæ of that transaction. In McGowen v. McGowen, 52 Tex. 657, it is said that the doctrine of res gestæ is based on the presumption that declarations made at the same time with the principal act—evoked by it without premeditation, and giving it color and character as explanatory of the mind and purpose of the actor—are as reliable as the act itself, of which it is a part, and can be proved along with it, without the oath of the party. In that case a suit had been instituted by the husband for divorce, on the ground of abandonment. The wife alleged that the abandonment was not voluntary, but was by the procurement and consent of the husband. A witness at the trial testified that a few days before the separation the wife came to him weeping and in great distress, and informed him of trouble between her husband and herself, but he was not permitted by the court to testify as to what she then said in regard to her being permitted by her husband to stay at his house, or her leaving by compulsion; nor was she permitted to state what she said in that regard immediately after separation, on reaching her mother's home. It was held that her declarations should have been admitted, as they were so much a part of the final act of separation and explanatory of its cause as to have been proper for the jury to consider.

In Standefer v. Aultman & Taylor Machinery Co., 34 Tex. Civ. App. 160, 78 S. W. 552, a contract for the sale of a threshing machine required the seller to send an expert to put the machinery in operation, and the seller's general state agent and manager was sent, and, after making an ineffectual effort to make the machinery operate properly, he admitted that it was a worthless outfit, and was not the machinery he had represented it to be to the buyer, nor the machinery ordered, but that the machinery plaintiff had ordered was torn up in a railroad wreck. It was held that the admissions were admissible against the seller in an action by the buyer for breach of warranty.

The trial court may have excluded the statement of Jordan on the theory that part of the statement was not admissible, to wit, that the tractor ought to have been "junked when it was sold to Mr. Stark," and that no effort in behalf of plaintiff had been made to separate the admissible from the inadmissible part of Jordan's statement, as required by the rules announced in the case of M., K. & T. Ry. Co. v. Washburn (Tex. Civ. App.) 184 S. W. 580, 582. It is there said, supported by the weight of numerous authorities, that: "Where evidence is admitted over an objection to the same as a whole [as in the case before us], a part of such evidence being admissible and a part not, no reversible error is committed."

But that "where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony. In such case it is not the duty of the court nor of the party objecting to the same to separate the admissible from the inadmissible," citing numerous authorities. See, also, Magee v. Paul (Tex. Civ. App.) 159 S. W. 325.

Some of us, the majority perhaps, are inclined to the view that Jordan's statement that the tractor should have been junked at the time it was sold to the plaintiff was in substance but the witness' method of expressing his conclusion that, from his examination of the machine and defects then appearing, it must have been practically worthless at the date of plaintiff's purchase, and, therefore, admissible together with the rest of the statement. The writer, however, entertains some doubt at this particular point, being inclined to the view that the question of whether the tractor should have been "junked" at the time of plaintiff's purchase was a conclusion necessary for the jury and one which the witness was incompetent to state. However, this question is not mooted in the briefs of the parties, and we will leave it undetermined for further consideration should plaintiff upon another trial insist upon an introduction of the entire statement.

■■ Defendant pleaded and here insists that by the plaintiff's long use and long failure to repudiate the same, he is estopped from claiming a recovery of the damages sought. In 10 R. C. L. p. 692, par. 21, it is said: "Mere silence will not work an estoppel. It must be some other element connected with the transaction and the silence to prevent a person from asserting his rights or claim." Again on page 697 the same authority says: "The final element of an equitable estoppel is that the person claiming it must have been

**1028**

misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated."

See, also, state decisions relating to the same subject, cited in volume 6 of Encyclopedic Digest of Texas Reports, p. 1026 et seq., under title "Equitable Estoppel or Estoppel by Misrepresentation or Conduct."

We fail to find any evidence that defendant has been misled to its injury or induced by plaintiff's delay in complaining to alter its condition, and conclude that the issue of estoppel as a defense is not in the case. It is true plaintiff's long use of the tractor and the character of that use, together with his delay in abandoning it, was relevant and is to be considered on the issue of whether or not at the time of plaintiff's purchase it was in fact substantially of the value and condition it was represented to be.

■ Nor do we think defendant's plea that the order for the tractor, signed by the plaintiff, "contains all the agreements between the parties hereto," is of weight as showing that plaintiff is estopped from maintaining his action. While the order contains the terms quoted, plaintiff's suit is not for the breach of any agreement evidenced by the order. The only agreements thus evidenced is that of defendant to sell upon the terms stated, and that of plaintiff to purchase and pay the price stated. Both of these have been fully performed and plaintiff's suit is not one to rescind or set aside either. On the contrary, plaintiff's suit is in effect an affirmance of the contract of sale. He only seeks to recover damages resulting from false representations which induced him to purchase. Plaintiff's delay may affect the weight to be given his complaints, but it does not estop him from maintaining his suit if, as is true here, it was instituted within the limitation period.

The judgment against the interveners will be left undisturbed, but in all other respects the judgment below will be reversed, and the cause remanded for another trial not inconsistent with this opinion.

On Motion for Rehearing.

■ The defendant in error, R. B. George Machinery Company, presents a vigorous motion for a rehearing based principally upon the contention that inasmuch as the court's special issue No. 1, which we held to be unsupported by the evidence, was an issue requested by the plaintiff in error Stark, he is estopped and precluded from contending that the evidence failed to sustain the answer of the jury to the issue. The following cases are in accord with this contention: Poindexter

v. Receivers of Kirby Lumber Company, 101 Tex. 322, 107 S. W. 42; Sanford v. Nueces River Valley R. Co. (Tex. Civ. App.) 143 S. W. 329; Crowley Mercantile Co. v. Brenard Mfg. Co. (Tex. Civ. App.) 287 S. W. 127; Commerce Farm Credit Co. v. Torrance (Tex. Civ. App.) 7 S.W.(2d) 1110; and other cases of like effect.

The charge on its face appears to be that of the court, but by reference to a bill of exception contained in the record (bill No. 7), which escaped our attention on original consideration, it appears that this together with other issues was in the form requested by the plaintiff in error Stark and interveners, and hence if it is our duty to apply the rule of the decisions cited, we perhaps improperly considered the assignment we sustained.

Article 2190, Rev. Civ. Statutes of 1925, has been amended by act of the 42d Legislature, approved April 25, 1931 (see Gen. Laws 42d Leg. Reg. Session, page 120, c. 78 [Vernon's Ann. Civ. St. art. 2190]). The amended act thus reads:

"Section 1. That Article 2190 of the Revised Civil Statutes of the State of Texas of 1925 be and the same is hereby amended so as to read hereafter as follows:

" 'Article 2190. When the Court submits a case upon special issues, he shall submit all the issues made by the pleading and evidence. Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or Writ of Error, an issue not submitted and not requested is deemed as found by the Court in such manner as to support the judgment if there is evidence to sustain such finding. A claim that the evidence was insufficient to warrant the submission of any issue may be complained of for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party.'

"Sec. 2. That all laws and parts of laws in conflict herewith be and the same are hereby repealed.

"Sec. 3. The importance of simplifying Court procedure and the near approach of the end of the Session of the Legislature create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and said Rule is suspended and this Act shall take effect and be in force from and after its passage, and it is so enacted."

The act is remedial in character and contains no saving clause, and, if effective, undoubtedly is to be followed, as it relates to a mere matter of court procedure in which appellant has no vested right. See Mexican National Railway Co. v. Mussette, 86 Tex. 708,

26 S. W. 1075, 24 L. R. A. 642. And the fact that the amendment is in opposition to prior decisions of the court is immaterial. See Storrie v. Cortes, 90 Tex. 283, 38 S. W. 154, 35 L. R. A. 666. The amendment manifests the legislative purpose to depart, from the rule of the cases above cited, and we are in accord with that purpose. Inasmuch, therefore, as we are in accord with the rule indicated by the legislative enactment, we will not now at this late day follow the decisions so clearly deprived of authority by the legislative enactment. We are the more inclined to thus dispose of the question by reason of the fact that the answers of the jury to issues other than issue No. 1 are at least apparently in conflict with the answer which we have held unsupported by the evidence, thus leaving the judgment to rest upon an uncertain basis suggestive of a possible miscarriage of justice.

Defendant in error's motion for rehearing is overruled.