## SOUTHERN UNDERWRITERS v. BEARDMORE.

### No. 4596.

Court of Civil Appeals of Texas. Amarillo.
May 4, 1936.

Rehearing Denied June 15, 1936.

Will R. Saunders, of Amarillo, for appellant.

S. D. Stennis and John V. Osborne, both of Pampa, for appellee.

MARTIN, Justice.

Appellee recovered judgment against appellant under the Texas Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.). His petition is not here questioned, and only its portions which have to do with the present legal issue will be referred to. He alleges he was an employee of the Panhandle Rig Company when injured. The disposition of this appeal turns on the question of who composed the members of said company on and after February 2, 1934. On August 15, 1933, a policy was issued to said company as a copartnership, composed of C. C. Clark, R. W. Beardmore, and C. L. Mayo. At the request of said partners, a rider was attached to said policy on February 2, 1934, providing in part: "It is hereby understood and agreed that the policy to which this endorsement is

attached, is changed to show C. C. Clark and C. L. Mayo eliminated from the partnership and R. W. Beardmore as the sole owner."

The change is shown to have occurred as a result of a desire to obtain the business of the Magnolia Petroleum Company, in building oil well rigs, which could not be gotten by the number then in the firm. Appellee was injured on May 24, 1934, while said policy containing the above indorsement was still in full force and effect. Appellant's contract of insurance was with R. W. Beardmore as sole owner of the Panhandle Rig Company. To recover, this record must sufficiently show that appellee was an employee of said last-named employer; it appearing conclusively that Panhandle Rig Company was only a trade-name, and not a separate legal entity.

■ The court submitted the following special issues:

"Do you find and believe from the preponderance of the evidence before you that the Panhandle Rig Company was not, on May 24, 1934, a co-partnership, composed of R. W. Beardmore, C. C. Clark and C. L. Mayo? * * *

"Do you find and believe from the preponderance of the evidence before you that at the time the plaintiff was injured, if he was injured, on May 24, 1934, by falling from a derrick, he was an employee of R. W. Beardmore?"

Both these were answered for appellee.

We sustain appellant's various contentions that the evidence is insufficient to support either finding.

We sketch briefly the background of this controversial issue:

R. W. Beardmore is an uncle of appellee, and, in the past, on very friendly terms with him. He was not placed on the witness stand at the present trial by appellee, nor were either Mayo or Clark. Nor was any evidence offered by him of any probative force that he was an employee of R. W. Beardmore, as sole owner of the Panhandle Rig Company. Appellant filed a sworn motion for continuance before going to trial in this case, alleging in substance and in part: That at the preceding term of court this case was tried and judgment obtained against appellant; that R. W. Beardmore testified as a witness at such trial that he was the sole owner of said Company when appellee was injured; that thereafter appellant learned for the first time that Beardmore was not the sole owner of said company, but same was in fact a copartnership, composed of said three parties, when appellee was injured; that both Mayo and Clark appeared on motion for new trial and so testified; that judgment was set aside and new trial granted. It then in great detail alleges other facts intended to show a necessity for taking the oral deposition of appellee and his uncle, its prior efforts to do so, and its failure. This was overruled, and trial was had, during which appellant introduced Mayo, obviously a hostile witness. Some of his testimony is here reproduced:

"Q. On the 24th of May, 1934, did you or not have an interest in the Panhandle Rig Company? A. I had my equipment interest; I had my interest in the equipment at that time.

"Q. Did you have a one-third interest in the business? A. Well, still had a third interest as far as the equipment was concerned.

"Q. Isn't it a fact that you had a one-third interest in the Panhandle Rig Company up until the time you sold out? A. How was that?

"Q. Didn't you—when did you sell out your interest? A. I sold out completely, either August or September, 1934.

"Q. Isn't it a fact you had and retained a one-third interest in the business from the time you first organized and began operating it, until the time you sold out? A. No, we came to a verbal agreement in February—

"Q. Just answer the question—didn't you retain a full third interest in the Panhandle Rig Company up until the time you sold out? A. We collected approximately one-third—

"Q. Just answer my question. A. Yes, sir. * * *

"Q. You retained your one-third interest until September, 1934? A. One-third of my equipment, only.

"Q. When did you sell your one-third interest? A. In August or September.

"Q. Of what year? A. 1934.

"Q. To whom did you sell it? A. Charley Clark. * * *

"Q. Now, I want to ask you this: From the time the company was formed in August, 1933, until the time you sold out your one-third interest in August or September, 1934, you owned a one-third interest in the

Panhandle Rig Company, which remained at all times yours, didn't it? * * *

"Q. Just answer yes or no. A. Yes, sir. * * * ·

"Q. Now, in the month of May, 1934, who else had an interest in the Panhandle Rig Company with you? A. Ross Beardmore had a controlling interest, and Charley Clark and I had an interest."

Cross-examination:

"Q. At that time, in substance, state whether or not this was the arrangement you made, that you made arrangements whereby the business would be turned over to Mr. R. W. Beardmore? A. Yes, sir.

"Q. That the business was in debt at the time and that Mr. Beardmore, as soon as he worked out the debts and got them paid, that he would then pay you for your interest in the tools? A. Yes, sir. * * *

"Q. And that the business was to be his from the time you turned it over to him and that his obligation was to first work out and pay the debts, and then pay you for the tools? A. Yes sir.

"Q. And that was the way it was operated after this date in February, 1934? A. Yes sir."

Redirect:

"Q. Isn't it a fact you wanted to get some work from the Magnolia, and the Magnolia told you they wouldn't give it to you as a partnership, and you made a fake sale and transferred it to Beardmore, to be taken in his name, and you retained your interest in it? A. That is what we done."

Mayo signed an ex parte written statement on February 5, 1935, containing the following language:

"From the time the company was formed, in August, 1933, until the time I sold out my one-third interest in August or September, 1934, I owned a one-third interest in the Panhandle Rig Company, which remained at all times mine. * * *

"About a year ago the Panhandle Rig Company wanted to build some rigs for the Magnolia Company, and that concern objected to a co-partnership building rigs for the company. At that time, I do not recall the exact date, the Panhandle Rig Company's policy of workmen's compensation insurance was endorsed, at the request of Clark, Beardmore and myself, to show that R. W. Beardmore was the sole owner. However, at that time, and thereafter, I retained my interest in the business."

He further testified:

"Q. Well, after this transaction whereby you all tried to put this business over in Beardmore's name, you still drew your money out there from the Panhandle Rig Company? A. Yes sir.

"Q. Drew it just like you had been drawing it? A. Drew just what I could get along on.

"Q. And Mr. Clark drew what he could get along on? A. Yes sir. * * *

"Q. Who wrote the checks? A. For a-while Charley Clark and myself wrote them.

"Q. What time were you and Charley Clark writing them? A. I don't just exactly remember; we wrote the most of them up until along in the summer sometime; I don't remember just when. * * *

"Q. Charley Clark wrote them, too? A. Yes sir.

"Q. Your names were authorized at the bank to sign those checks for the Panhandle Rig Company? A. Yes, we never did change it.

"Q. And you carried your account in the name of Panhandle Rig Company? A. Yes sir.

"Q. That is the way your checks were signed, 'Panhandle Rig Company,' by you or Clark or Beardmore? A. Yes sir."

The above is in substance all the evidence on the issue under discussion.

Mayo testified in effect that he did and did not sell his interest to Beardmore in February, 1934. If we give recognition to the rule that the jury had the right to accept the former and reject the latter, what are we to do with his undisputed testimony that he continued to draw money from, and write checks on, the firm, and that in the summer of 1934 he sold out his interest to Clark? How could he sell something he had already sold to Beardmore? Before this evidence appellee stood silent at the trial. What does R. W. Beardmore, his uncle, know about this sale of the business, called by Mayo a "fake sale"? What do Beardmore's books show? These circumstantially appeared available to appellee from a friendly source. We quote:

"Usually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means are readily accessible to him. The failure of a party to take advantage of an opportunity to explain inculpatory circumstances is evidence against

him, and his failure to produce evidence in his possession which might have rebutted a presumption against him strengthens such presumption. Where a party does not in any way seek to contradict the testimony of his adversary on a particular point, the presumption is that he has no testimony to controvert it; and when the proof tends to establish a fact, and at the same time discloses that it is within the power and the interest of the opposite party to disprove it, the silence of the opposing party not only strengthens the probative force of the affirmative proof but of itself is clothed with a certain probative force." 17 Tex.Jur. pp. 306, 307. See especially Southern Pac. Co. v. Ulmer (Tex.Civ.App.) 282 S.W. 305, 307.

■ Article 8307, § 5, as amended by Acts 1931, c. 224, § 1 (Vernon's Ann.Civ.St. art. 8307, § 5), provides in substance that a certified copy of the notice of the employer becoming a subscriber, filed with the board, "shall be prima facie proof of all facts" therein stated, unless denied under oath. Appellee contends that, since appellant failed to deny coverage under oath, it cannot now dispute same. Appellant does not deny, but admits, coverage of R. W. Beardmore. Obviously we think it did not have to deny under oath the existence of a contract made with a third party and not sued upon. It did deny that appellee was an employee of R. W. Beardmore, sole owner of the Panhandle Rig Company.

■ Nor do we think its payment of $10 per week for twenty weeks of appellee's claim as an employee of R. W. Beardmore was an admission of liability or of coverage, under another and different contract, not sued on or in existence. It specifically pleaded and circumstantially showed that such payment was made under the mistaken belief that R. W. Beardmore was sole owner, and that same was induced by the fraudulent representations of such fact. The cases of Texas Employers' Ins. Ass'n v. Beckworth (Tex.Civ.App.) 42 S.W.(2d) 827, and others of like character have no application to the facts of this case.

■ Appellee contends that appellant, having requested and obtained a finding that Mayo was not a partner on the date of the injury of appellee, cannot now question the sufficiency of the evidence to support such finding, citing Haynes v. Taylor (Tex. Com.App.) 35 S.W.(2d) 104, and Poindexter v. Receivers of Kirby Lumber Co., 101 Tex. 322, 107 S.W. 42. These were decided under article 2190, before its amendment in 1931 (Vernon's Ann.Civ.St. art. 2190). This amendment pointedly provides that same may be done, and no appellate court has judicially nullified this provision so far as we are aware. Instead, they have held it may be done, as therein provided. Stark v. R. B. George Machinery Co. (Tex. Civ.App.) 41 S.W.(2d) 1023; Halsey et al. v. Humble Oil & Refining Co. et al. (Tex. Civ.App.) 66 S.W.(2d) 1082; Shary et al. v. Helmick et ux. (Tex.Civ.App.) 90 S.W. (2d) 302.

■ The present policy by express terms prohibited an assignment without appellant's consent. The contract here was a personal one between the parties therein named. Obviously, the insurance company was entitled to know the identity of the party with whom it contracted, and is not liable upon a contract not made by it. To recover, appellee had to show he was an employee of the party with whom appellant had a contract of insurance. The evidence here, in our opinion, is insufficient to show this indispensable fact. See Traders' & General Ins. Co. v. Emmert (Tex.Civ.App.) 76 S.W.(2d) 208 (writ ref.), and New Amsterdam Casualty Co. v. Harrington et al. (Tex.Com.App.) 290 S.W. 726.

Appellant has filed a ponderous brief containing a great multitude of contentions. Practically all of them are without any merit, and space will not be consumed in their discussion. Many of them will not likely again occur.

■ We decline to render this case as requested by appellant. There seems to be no doubt of appellee's injury. He will not be denied full opportunity to make out a legal case.

Reversed and remanded.